If it pleases the Court, my name is Michael Bigelow and I represent Petitioner in this matter, Charles Martin. The District Court and Respondent together make an effort to bring to the Court's attention 20-some cases purportedly standing for the proposition that Clark-Robbins timeliness far as consistently applied and that the standard substantial delay is well and truly fine. Those cases don't help. Some of the cases cite to Clark in almost an offhanded way. They move on having found that whatever delay there was is excused. None define, describe, illustrate, explain or otherwise help anyone, let alone a layperson, understand what is meant by substantial delay. Scott cites to Clark in support of the correct way to set forth the allegations. Doesn't cite it for delay, just how to set forth the allegation. Little, 14-month delay is okay. Contrast that with Gov, where the Court had a 7-month delay that it was mightily concerned about, but found that it had been explained. Anderson, late petitions are okay. Citation to Clark to the effect that justification or that delay without justification is okay. Cobos, delay is okay because it's explained. Again, cites to Clark. Harris was a sentencing issue. And the Court in Harris, the Court in Harris said that its jurisdictional delay is not an issue. Timeliness far is not an issue. We don't need to get that, but there's a reference to Clark. Birdwell is basically a silent denial. And Romero is, in my opinion, just a bit of a primer on what the timeliness far is all about. But again, it doesn't explain substantial delay. Also, assuming it makes any difference, assuming for the moment it makes a difference, what is the magic date that the law must have been clear by? Is it March 18th, the day he files his petition in the Cal Supreme Court, or is it September 11th, the day they actually denied it? In my case? Sure. Probably September the 11th. So it doesn't matter if he doesn't know what the law is when he files it on March 18th. That's no big deal as long as it's clarified by the time they dismiss it on September 11th, right? It would seem to be the case. Okay. Respondent's most helpful case is Soderstein. He argues it in his brief. There the Court assumes substantial delay. Their language. We assume substantial delay. But the Court ducks the issue. They, in fact, say we do not decide whether there is substantial delay. That's the closest Respondent's cases come to dealing with the concept of substantial delay. Okay. A few of the cases cited by the government and by the district court deal with subsequent petitions, a horse of a different color, or subsequent appeals, again, a horse of a different color. And, again, they cite the Clark. So Clark doesn't really help in their proposition. Senior, Millsap, Navis, and Bitteker are all those issues. At least three are Coram Novus cases. Cite the Clark by analogy as a trigger date. One of the cases, interestingly enough, doesn't deal with substantial delay but calls it a considerable time lapse, the passage of considerable time. So even that Court doesn't know what it's dealing with or how to deal with the concept  And the other cases that are set forth, arguably, that the government would argue are in Clark, Fairbanks, Penaite, Duque, and Drews are the Coram Novus cases. Motola, and I can't remember when I got this one from the government, if it was just recently or if it was one-sided. I think it was one-sided. But, anyway, that was a motion to withdraw a plea pursuant to California Penal Code Section 1018, which they kind of treated like a Coram Novus. But, again, Clark is cited as the triggering date, when the Petitioner or the Defendant knew or reasonably should have known is the triggering date. Another case is a mandamus, mandamus, brought to the State court in a capital case, in a capital case, after a motion in State court, made in State court, for discovery. And after some machinations, the citation in Cooper is a mandamus. It is to the idea that motions may not be brought after unjustified delay. I don't think they even use the term substantial delay. The point is, from Petitioner's, a Petitioner's point of view, from a Petitioner's standpoint, in the State of California, he doesn't really know how long he has to file his petition, assuming a standard triggering date. Something that's even more troubling, or confusing at least, it seems almost, as you read through these, the litany of cases, that the courts struggle with the idea that we don't really know what the triggering date is. We don't know if we're talking about delay from the point of time or during the period of time the Petitioner is trying to find the missing videotape or the missing police report that is going to exonerate him, or a point in time from the time he actually finds this exonerating evidence and wishes to present it by way of habeas, the time he – that triggering date to the time he files it. The courts in their discussions almost confuse the issues. So even to them, it's not known. And, of course, the points that I make in my – in my brief, which I will reiterate only briefly, I don't understand how the district court can, on the one hand, say the rule is clear, and I love this district court. I've appeared before him in many occasions, but he and I fight tooth and nail, and I'm fighting with him on this one. He, on the one hand, says the California Supreme Court may have simply arbitrarily declined to deal with the issue or may have simply overlooked it. Arbitrary. We don't deal arbitrarily in this judicial system. And then, on the other hand, he says, but it is consistently applied and everybody knows what the rule is, and it is always, in the majority of cases, applied appropriately. I've got about a minute and a half, but I think we're – Unreserved. Yeah. May it please the Court. Todd Marshall on behalf of the Respondent. In California, once the presumption of timeliness for capital cases is passed, all habeas petitioners are treated the same. The California Supreme Court has stated as much clearly in Clark and Sanders. The Bennett Court tried to frown upon the use of capital cases in analyzing non-capital habeas timeliness. However, it's inappropriate for the federal court to second-guess California's interpretation of its own laws. The California courts have made it clear, once the presumption of timeliness is passed, everybody is treated the same. Substantial delay. If you trace through Bennett to find out the source of their authority for why they think capital cases should not be used in a non-capital context, you find that they cited to the district court opinion in Deere. And if you trace through that, you find that the district court in Deere was merely citing the United States Supreme Court policies on death cases. But, you know, if you're asking us to overrule Bennett, we can't do that. We're a three-judge – well, two-judge case. And one by audio. We're a three-judge panel. We can't overrule Bennett. So we take Bennett as our controlling precedent. I'm just trying to further you along because it looked like you were headed to saying Bennett's bad law. Well, it may or may not be, but it's our law. Oh, I see you've gone to the next page. Well, you know, I mean, Bennett has been criticized, and I understand the criticisms, but as a three-judge panel, we can't overturn it. I'll simply put it, it's inappropriate to second-guess California's interpretation of its own laws, and I'll move on. As support for the conclusion that both capital cases and non-capital cases are the same is that the California courts routinely cite Clark and Robbins in their non-capital dispositions. As to what is substantial delay, I'm asking this Court to look to Sanders. The Sanders court said three years and five months is substantial delay. I'm not asking this Court to make any finding about any time frame before that. It's important to review here that Mr. Martin knew of his trial claims that he raised in his second habeas petition more than six years before he filed his brief, and he knew of the claims that he wanted to make regarding the ineffective assistance of counsel at the California Supreme Court direct review phase for more than five years by the time he filed his second petition. It's also important to note that as he was filing a second petition, the courts had warned him that if you're filing a successive petition that's also more than three years and five months late, you have an extra duty to explain why you didn't raise these claims before and why are you coming to us now. His only offer of justification was generally to say, I was diligent and it didn't prejudice the people. Robbins, of course, tells him that general declarations to that effect are inadequate. As for what is good cause in California, there are several concrete examples that have been given. Investigating additional claims in good faith is a good excuse for delay so as to avoid piecemeal presentation of claims. Abandonment of counsel has been found to be a good cause for delay. Lockdowns, lack of access to legal materials, et cetera. It's also not fatal to the California rule that all of the potentials of what good cause might be have not yet been explored. As in the Federal context, what constitutes equitable tolling to delay the statute of limitations has not been exhaustively handled. So what do you do, how do you deal with Townsend? Townsend found only that I had failed to carry my burden of establishing the bar. Not that the bar was inadequate. And what I posit was wrong with the Townsend case and distinguishable from this case is that the magistrate in that case went from the counter proffer by the petitioner to ruling without affording me an opportunity to carry my ultimate burden. At that time, King had not yet been decided. I viewed the proffer, the counter proffer by petitioner as an inadequate to shift the burden back to me. I posit that I should not have had to guess whether his efforts to shift the burden back to me were adequate. And then the next thing I knew, there was a ruling against me. So I had no window with which to present my efforts to try to carry the burden in that case. So I gather your argument on Townsend is that it was an evidentiary when the court said you hadn't met your burden, you view that as a, this is a new opportunity as a second bite at the apple rather than the court in Townsend saying no, there's no, we can't determine that it's clearly and consistently applied. Am I stating your argument correctly or not? My argument is that I didn't present evidence to carry my ultimate burden because I wasn't afforded an opportunity to do so. My thought of what should have happened in Townsend would be that as soon as the petitioner made a counter proffer, if the court believed that counter proffer were sufficient to shift the burden to me, it should have said so, which would then have triggered my duty to carry my ultimate burden. And that part didn't happen. Right. But we can't re-litigate Townsend. We only can determine what it means. And I gather what your position is what Townsend means is it was only a determination of the record at that point. That I had failed to carry the burden by failing to proffer evidence. And the defense would say no, the Ninth Circuit held that as of 2002, it's not a rule that's been consistently applied. I don't think that's what the case says. I read it pretty carefully. I'm just saying what the sentence says. Fair enough. Yeah. Or the defendant would say. Counsel, I'll ask you the question I asked your opposing counsel. What is the magic date that it must have been cleared by? Is it by the day the person files? Or is it some later day when the court finally decides the question? I believe it's the day he filed. All right. So in this case, it would be March 18th as opposed to the later September 18th, if it makes any difference. Correct. Okay. Yes. Returning now to the concept of good cause and any complaint that all types of acceptable good cause have not been articulated, it's not incumbent upon Petitioners to regurgitate previously accepted reasons. Rather, Petitioners must simply tell the truth about their reasons for the delay in their case. So how would you define substantial delay under California law? What does that mean? I'm asking this Court to find. How long is it? I'm asking this Court to find that Sanders drew a line in the sand of three years and five months. That Court said three years and five months is substantial delay. I'm not asking this Court to opine upon any earlier time. That can be left for another day, a different Petitioner, a different time. This Petitioner. Should I come from a state where the lines, timelines are clearly defined? So when I got on this Court a decade and maybe a little shy about half ago, it was a little Red Clark and Robbins and it was like saying how long is string? What does that mean? I think things have clarified a bit since in the last 13 years, but there still seems to be all over the map. But it's a big state. I understand that. All I'm asking this Court to see is that Sanders said three years and five months. Why shouldn't we consider the postcard denials in our analysis? Because it requires too much speculation to glean anything from them. And that's what the Magistrate was meaning when he talked about they might have overlooked it, it might have been arbitrary. He wasn't saying that's what was happening. He's saying that's why we can't look at the postcard denials, because we don't know. You don't know how long the delay was from postcard denial. You don't know what justifications may or may not have been offered. You don't know if that Petitioner asked for an exception to the claim. You simply know nothing. And it shouldn't be held against the State that they silently deny some cases because of the overwhelming nature of cases that California has to deal with. They simply can't possibly write an explicated decision every time. And you would include both those that cite a couple cases and those that are just blank. Correct. That are just, that you respond to a petition for a postcard, right? If they say Clark Robbins and nothing else, you know they imposed a time bar, but you have no understanding of why or what the circumstances were, when the claims were learned. That's true. But, I mean, in analyzing on an aggregate basis of whether the rule is consistently applied, why wouldn't you take the entire body of data? I mean, you can, for whatever it's worth. Well, if you look at that body of data, and Petitioner's survey provides you with that, you find that 25 percent of the time the Court is citing Clark and Robbins, and I would posit that that's quite regularly. We have a lot of cases, too, but we explain the rationale in most of them. In California, the Superior Court in California is required to explain its habeas corpus decisions, and I haven't yet mastered a way for me to search the database of Superior Court rulings, but I'm working on it. Yeah. As for consistent application, it's important for this Court to remember that it's important for this Court to have consistent application. It's important for this Court to remember that the scope of my burden is measured by the proffer offered by the Petitioner. In this case, the Petitioner offered no specific case citation in which inconsistent application is shown, zero. Taking that zero, and then taking my 24 or two dozen cases approximately, I would posit to this Court that surely two dozen cases showing consistent application is sufficient to carry my burden when my opponent offers you exactly zero cases. Finally, it's important to remember that the United States Supreme Court in Lambrex has stated that State procedural rules are of vital importance to the orderly administration of the State's criminal courts, and when the Federal courts allow these rules to be readily evaded, they undermine the criminal justice system. I have a couple of final comments that I'd like to make. It would be a strange system indeed if we indulged in a premise or a presumption that jurors will follow the law, but we engage in exactly the opposite premise, that State courts are not following the edicts of their California Supreme Court, especially when the auto equity case tells lower courts in California they must follow the edicts of their State high court. Thank you, counsel. Butler? Twenty-five percent of the cases is not a majority of the cases. Those are the silent denials my little survey came up with. Majority, I think, is what the magic word is from Morales. I could be wrong on the site there. Are we setting an impossibly high burden for the State in these cases in a State like California where we're looking at thousands and thousands and thousands of cases and you expect a certain amount of aberration in decisions? It's about, I think it's about 5,000 a year. Yeah. 2,500 a six-month period. I don't think it's a high burden that they created. They could solve the problem. They've got to pass legislation like they have in Nevada, like the federal government has under ADFA. It's real easy. It's their problem. They have done nothing to solve it. All they've got to do is say this is substantial. That's the legislature's problem. I'm sure the Attorney General would like to have the legislature act too, but it's beyond all of our power. The Supreme Court could. The Supreme Court could identify it. Well, why didn't it do it in Sanders? I'm sorry? Why didn't it establish that? They say because there are too many cases and we can't deal with them. Mr. Marshall knows more about California Timeliness Bar probably than any other living human being. He's been defending it for about 10 years. And his work has been cited by other districts other than the Eastern District. And this is the best he can come up with, his 20 or 24 cases that really don't speak to the issue that he wants it to speak to. And why we just simply don't follow the rulings of the California Supreme Court in its interpretation of its own laws is, as someone more worthy than I said actually sitting there, I guess we could just do away with the Rita Habeas Corpus. Thank you very much. Thank you. The case will be submitted for decision. I appreciate both of your arguments.
judges: Aldrich, Fernandez, Thomas